UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SANDRA M. H., | No. SA CV 18-1933-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Sandra M. H.[1] ("plaintiff") filed this action on October 29, 2018, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on November 21, 2018, and December 4, 2018. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on September 3, 2019, that addresses their positions concerning the disputed issue in the case. The

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1968. [Administrative Record ("AR") at 38, 159.] She has past relevant work experience as a delivery route truck driver, a grocery manager, a grocery clerk, and in the combination job of checker, bakery products and bakery sales clerk. [Id. at 37-38, 60-67.]

On July 23, 2015, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since May 13, 2013. [Id. at 25; see id. at 159.] After her application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 91-92.] A hearing was held on September 13, 2017, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 44-72.] A vocational expert ("VE") also testified. [Id. at 60-71.] On October 12, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from May 13, 2013, the alleged onset date, through October 12, 2017, the date of the decision. [Id. at 25-40.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 148.] When the Appeals Council denied plaintiff's request for review on August 29, 2018 [id. at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the

second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 13, 2013, the alleged onset date.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of obesity; bilateral shoulder impingement; degenerative disc disease of the cervical spine with a history of radiculopathy; carpal tunnel syndrome; degenerative disc

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. [AR at 28.]

4

disease of the lumbar spine with radiculopathy; degenerative changes of the knees; and uncomplicated diabetes mellitus. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] as follows:

> [She] can frequently reach. She can occasionally push and pull with both arms. She can frequently handle and finger bilaterally. She can occasionally climb, balance, stoop, kneel, crouch, and crawl.

[Id. at 29.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as a delivery route truck driver, a grocery manager, a grocery clerk, and the combination job involving checker, bakery products and bakery sales clerk. [Id. at 37.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "document preparer" (Dictionary of Occupational Titles ("DOT") No. 249.587-018), as an "election clerk" (DOT No. 205.367-030), and as an "addressing clerk" (DOT No. 209.587-010).[5] [AR at 39.] Accordingly, the ALJ determined

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[5] Some courts have found that the occupations of "addressing clerk" and "document preparer" are obsolete. See, e.g., Skinner v. Berryhill, 2018 WL 1631275, at *5 (C.D. Cal. Apr. 2, 2018); Rhoades v. Comm'r of Soc. Sec., 2019 WL 3035517, at *1 (E.D. Cal. July 11, 2019) (noting that defendant "largely" agreed with plaintiff that the jobs of "addresser" and "document preparer" are obsolete on their face). In this case, the VE also testified that there were 7,300 addressing clerk jobs in the national economy, which does not constitute a significant number of available jobs. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (noting that 25,000 jobs nationwide constitutes a significant amount of work in the national
(continued...)

5

that plaintiff was not disabled at any time from the alleged onset date of May 13, 2013, through October 12, 2017, the date of the decision. [Id. at 39-40.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he rejected the uncontradicted January 2015 opinion of agreed orthopedic medical examiner David Heskiaoff, M.D. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for payment of benefits.

**A. LEGAL STANDARD**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r

---

[5](...continued)
economy). With respect to the election clerk occupation, at least one court has found that the DOT description of the election clerk position, which references that the job is available "during elections," is inconsistent with evaluating a claimant's ability to perform work activity on a regular and continuing basis. Arguello v. Berryhill, 2019 WL 121192, at *4 (C.D. Cal. Jan. 7, 2019) (citing cases).

of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.     ANALYSIS**

Dr. Heskiaoff, the agreed upon medical examiner in relation to plaintiff's Worker's Compensation claim, examined plaintiff a number of times between January 10, 2014, and

January 16, 2015, and prepared several reports. [JS at 4-8 (citations omitted).]

On January 10, 2014, Dr. Heskiaoff examined plaintiff and noted, among other things, that she had tenderness and spasm in the trapezius area on the left side and tenderness in the right trapezius; decreased range of motion of the cervical spine and left shoulder, with a positive impingement sign; and decreased range of motion in the lumbar area and positive straight leg raising. [AR at 350-51.] He ordered additional testing: MRIs of the cervical spine, lumbar spine, and left knee; and EMG/nerve conduction studies of the cervical and lumbar spines. [Id. at 351.] In his January 10, 2014, report, Dr. Heskiaoff determined that plaintiff was to remain on temporary total disability, had not reached maximum medical improvement, and required additional treatment. [Id. at 322-53.]

On March 5, 2014, after reviewing additional diagnostic studies, including (1) May 3, 2013, MRI scans of plaintiff's cervical spine, lumbar spine, right shoulder, and left shoulder, and (2) a January 28, 2014, MRI of the left knee, and January 28, 2014, EMG/NCV studies of plaintiff's bilateral upper extremities and bilateral lower extremities, Dr. Heskiaoff issued a supplemental report. [Id. at 314-20.] He noted that the MRI of the left knee "is abnormal," and opined that plaintiff is a candidate for arthroscopic surgery on that knee. He also noted that the 2013 MRI of the left shoulder showed "significant findings of impingement, a biceps tendon tear, and a labral tear," and that despite August 5, 2013, surgery on her left shoulder, there was a "worsening of the left shoulder during therapy." [Id. at 318.] He discussed plaintiff's "significant limitation in range of motion," and stated that she "may require manipulation under anesthesia and possibly revision surgery." [Id.] With respect to plaintiff's right shoulder, he stated that the findings were consistent with impingement and that she should be offered cortisone injections and may require right shoulder surgery if the condition does not improve or continues to worsen. [Id. at 319.] The EMG/nerve conduction studies revealed "acute and chronic left S1 radiculopathy as well as left acute and chronic C5 radiculopathy." [Id.] He stated that plaintiff should remain on temporary total disability "until the recommended treatment has been completed." [Id.]

Dr. Heskiaoff again examined plaintiff on August 28, 2014. [Id. at 283-313.] He reviewed additional medical and other diagnostic records and conducted a physical examination. [Id. at

8

292-308.] Among other things, Dr. Heskiaoff noted decreased range of motion of the left shoulder, despite a left shoulder injection in May 2014, "which helped for a short period of time"; tenderness of both sides of the neck; decreased range of motion of the cervical and lumbar spines; continued pain in the neck, left upper extremity, left lower extremity, and left knee; positive straight leg raising; mild carpal tunnel syndrome of the right wrist; and moderate left carpal tunnel syndrome. [Id. at 309-10.] He again stated that plaintiff had not yet reached maximum medical improvement and that she should remain on temporary total disability. [Id. at 311.]

Finally, on January 16, 2015, Dr. Heskiaoff prepared a Supplemental Report of Agreed Orthopedic Medical Evaluator. [Id. at 274-82.] He noted that the parties requested he prepare a "final ratable report," and stated that plaintiff had reached maximum medical improvement and "from a practical standpoint the patient's condition be declared permanent and stationary." [Id. at 275-76.] He asserted the following work restrictions: (1) with regard to her cervical spine, plaintiff should be "precluded from repetitive flexion and extension"; (2) with regard to her shoulders, she should be precluded from repetitive work at or above shoulder level as well as from pushing and pulling more than five pounds; (3) with regard to the lumbar spine, she should be precluded from heavy lifting and repetitive bending or stooping; and (4) with regard to the left knee, she is precluded from repetitive squatting, kneeling and climbing, and advised to avoid working at heights. [Id. at 276.] He also stated that he believed surgical intervention may be necessary with respect to plaintiff's lumbar spine, left knee, left hand, and left shoulder. [Id. at 276-77.]

The ALJ gave "partial weight" to Dr. Heskiaoff's January 2015 opinion as follows:

> Dr. Heskiaoff indicated that [plaintiff] should not perform repetitive flexion and extension of the cervical spine, repetitive work at or above shoulder level, or pushing and pulling more than five pounds. He indicated that she should not perform heavy lifting, repetitive bending, stooping, squatting, kneeling or climbing, and was generally advised to avoid working at heights. This opinion is generally consistent with the longitudinal record detailing grossly intact physical functioning despite a variety of musculoskeletal complaints. However, the limitation regarding lifting exceeds every other function-by-function assessment in the record, as well as [plaintiff's] own reports that she carries her own groceries and takes care for her own physical needs. This is also reflected by the fact that Dr. Heskiaoff offered this opinion somewhat reluctantly because he anticipated improvement in [plaintiff's] functioning with additional treatment.

[Id. at 36 (citations omitted).]

9

Plaintiff observes that after finding Dr. Heskiaoff's opinion "generally consistent" with the record, the ALJ only specifically rejected Dr. Heskiaoff's finding "regarding lifting" as exceeding any other assessment in the record and plaintiff's own reports. [JS at 11.] Thus, she argues, "[n]owhere does the ALJ address Dr. Heskiaoff's opinion regarding [plaintiff's cervical] neck movement or working at or above shoulder level" and, because the ALJ made no finding with respect to plaintiff's cervical movement, he plainly rejected Dr. Heskiaoff's opinion regarding the preclusion from repetitive (i.e., more than 50% of the time) flexion and extension of the cervical spine. [Id. at 12.] She also asserts that despite Dr. Heskiaoff's opinion that she cannot engage in repetitive work at or above shoulder level, which, again, would be the equivalent of no more than 50% of the time, the ALJ instead determined that plaintiff could *frequently* (i.e., up to two-thirds of the time) reach, without explaining how he arrived at that conclusion. [Id.] Plaintiff submits that to the extent the ALJ rejected Dr. Heskiaoff's findings because he offered his opinion "somewhat reluctantly," this was not a clear and convincing (or even a specific and legitimate) reason to discount that opinion and, in any event, Dr. Heskiaoff's report does not in any way indicate "reluctance" to provide his opinions; instead, he merely noted that there was still additional treatment available to plaintiff for her multiple complaints. [Id. at 13 (citations omitted).] Plaintiff argues that this "reason" given by the ALJ to discount Dr. Heskiaoff's opinion is merely "speculation about the thoughts and beliefs of an author of a medical report, [and] does not constitute a clear and convincing reason [or a specific and legitimate reason] supported by substantial evidence to reject the uncontradicted limitations with respect to [plaintiff's] neck limitations and ability to work at or above shoulder level." [Id. (citations omitted).]

Defendant responds that the ALJ properly gave the "most weight" to the opinion of the internal medicine consultative examiner John S. Godes, M.D.[6] [Id. at 14 (citing AR at 35, 614-

---

[6] Like the ALJ, defendant argues that workers' compensation-related assessments are "developed under a legal framework distinct from that of the Social Security Act," and involve "administrative conclusions involving differing criteria and terms of art, unique to the rules and regulations of workers' compensation." [Id. at 15; AR at 35.] However, an ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, an
(continued...)

23).] Defendant notes (as did the ALJ) that Dr. Godes' opinion was "broadly consistent with the evidence as a whole," which "detailed a variety of musculoskeletal complaints concerning the neck, upper extremities, back, and knees, but also indicated grossly intact mobility, strength, sensorimotor and neurovascular functioning, and the ability to ambulate independently, rise from a seated position, and make fists." [Id. at 14-15 (citations omitted).] Defendant notes (as did the ALJ) that Dr. Godes' opinion was not adopted verbatim, because "Dr. Godes was not able to review the longitudinal record and consider additional evidence that noted greater ranges of motion in the shoulders, significant improvement in active range of motion and strength with physical therapy, and reports of symptom magnification." [Id. at 15 (citations omitted).] Defendant submits, therefore, that the ALJ "properly rejected [Dr. Heskiaoff's five-pound] lifting limitation as *not* consistent with the record evidence, e.g., the opinion of another examining physician -- Dr. Godes," and that "[e]ven Plaintiff's treating physician, Dr. Mays, opined that [plaintiff] could lift ten pounds."[7] [Id. at 16 (citations omitted).]

Defendant agrees with plaintiff that in addition to explicitly rejecting Dr. Heskiaoff's lifting limitation, "'it is plain to see' that the ALJ [implicitly] rejected other aspects of Dr. Heskiaoff's functionality opinions -- the limitations on cervical spine flexion and extension and work at or above shoulder level," but argues that "these too were inconsistent with the record evidence," including

---

[6](...continued)
ALJ must evaluate the medical records prepared in the context of workers' compensation in the same way he would evaluate records obtained otherwise. Id. (citing Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the workers' compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). Further, an ALJ is not entitled to reject a medical opinion based "on the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (citing Lester, 81 F.3d at 830). Here, the ALJ did not provide any evidence that *any* of plaintiff's workers' compensation physicians, including Dr. Heskiaoff, was anything but unbiased in conducting examinations and writing reports.

[7] Plaintiff does not appear to be arguing that the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Heskiaoff's lifting limitation and, indeed, notes that "the ALJ's rejection of those [lifting] limitations is irrelevant because the ALJ did not articulate any basis for rejecting other important limitations found by Dr. Heskiaoff." [JS at 11.] Because this "lifting" issue is discussed by defendant, in an abundance of caution, the Court will also address it herein.

the opinions of Dr. Godes and Dr. Mays. [Id. at 16 (citations omitted).] He argues that the ALJ's failure to explicitly reject these aspects of Dr. Heskiaoff's opinion is not reversible error, "because the Court may 'draw specific and legitimate inferences' from the ALJ's discussion of the conflicting reports and evidence in the record that show his rationale." [Id. at 16-17 (citing Magallanes v. Bowen, 881 F.2d 747, 753-55 (9th Cir. 1988)).] However, this argument ignores the fact the ALJ did *not* state that he was discounting Dr. Heskiaoff's opinions regarding these other limitations as inconsistent with other opinions in the record. In fact, the ALJ specifically stated that Dr. Heskiaoff's opinion was "*generally consistent* with the longitudinal record" -- only expressly pointing to the lifting limitation as being inconsistent with other record evidence. [AR at 36 (emphasis added).] "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting Dr. Heskiaoff's opinions that were not given by the ALJ in the Decision, especially where -- as in this case -- the ALJ appears to have specifically disavowed the very reason suggested by defendant. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

After review of the record, the Court finds that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Heskiaoff's opinions regarding plaintiff's preclusion from repetitive flexion and extension of the cervical spine, repetitive work at or above shoulder level, or lifting.

With respect to Dr. Heskiaoff's lifting limitations, the ALJ -- somewhat ambiguously -- stated that Dr. Heskiaoff's "limitation regarding lifting exceeds every other function-by-function assessment in the record," as well as plaintiff's testimony that she carries her own groceries and takes care of her own physical needs. [Id. at 36.] Dr. Heskiaoff, however, arguably made two separate "lifting" findings: (1) because of plaintiff's shoulder impairments, she "should be precluded from . . . pushing and pulling of more than five pounds"; and (2) because of her lumbar

spine impairments, plaintiff "is precluded from heavy lifting." [AR at 276.] Dr. Heskiaoff did not define what he meant by "heavy" lifting. In any event, the fact that plaintiff admits that she carries her own groceries, "which are not packed heavy"[8] [id. at 197], is neither inconsistent with Dr. Heskiaoff's opinion that plaintiff should be precluded from heavy lifting, nor obviously inconsistent with Dr. Godes' finding that plaintiff can lift 10 pounds occasionally and less than 10 pounds frequently [id. at 619], nor with Dr. Mays' finding that plaintiff "should not lift[] loads greater than 10 pounds." [Id. at 1792.] Additionally, the ALJ's finding that Dr. Heskiaoff's lifting limitation is inconsistent with plaintiff's ability to "take[] care for her own physical needs" [id. at 36 (citations omitted)], is completely contradicted by the one record he cites to that even remotely discusses plaintiff's ability to take care of her physical needs. That one record actually reflects that while plaintiff "admits to doing some light grocery shopping," she also states that she "has *difficulty* taking a shower, tending to her grooming, hygiene and getting dressed" -- the polar opposite of the proposition for which the ALJ cites to it. [Id. at 1826 (emphasis added).]

With respect to Dr. Heskiaoff's opinion that plaintiff should be precluded from repetitive flexion and extension of the cervical spine or repetitive work at or above shoulder level (i.e., a form of "reaching"), Dr. Godes also specifically noted that due to plaintiff's cervical discogenic disease with radiculopathy, plaintiff should be *precluded* from overhead lifting and should be limited to *occasional* reaching. [Id.] Dr. Godes' reaching limitation, while less restrictive than Dr. Heskiaoff's preclusion from repetitive work at or above shoulder level, nevertheless lends support to Dr. Heskiaoff's findings. Likewise, Dr. Mays stated that plaintiff should be precluded from "repetitive use of her upper extremities particularly on the left side, no pushing, pulling, torquing or twisting, and no lifting loads greater than 10 pounds." [Id. at 1792.] Without providing a specific and legitimate reason for discounting these opinions of Dr. Heskiaoff (as supported by Dr. Godes and Dr. Mays), however, the ALJ found plaintiff could *frequently* reach. The ALJ's failure to provide

---

[8] Logically, just because a medical professional states that an individual should be precluded from heavy lifting, or should only occasionally lift or carry ten pounds, does not mean that the individual could not -- should they need to do so -- lift or carry in excess of that weight. It simply means that lifting more than the suggested weight might exacerbate the individual's symptoms or impairments and should be avoided.

*any* reason -- let alone a specific and legitimate one -- for discounting Dr. Heskiaoff's opinion that plaintiff should be precluded from repetitive flexion and extension of the spine, and repetitive work at or above shoulder level (or to at least limit such activity to occasionally), constitutes reversible error. This is especially true in light of the VE's testimony that if the hypothetical individual, limited to sedentary work, was also limited to reaching in all directions *occasionally*, there would be no available work because "sedentary, unskilled work, . . . requires frequent reaching in order to perform the duties." [Id. at 69-70.]

Finally, after stating that "the limitation regarding lifting exceeds every other function-by-function assessment in the record, as well as [plaintiff's] own reports that she carries her own groceries and takes care for her own physical needs," the ALJ asserts that "*[t]his* is also reflected by the fact that Dr. Heskiaoff offered his opinion somewhat reluctantly because he anticipated improvement in [plaintiff's] functioning with additional treatment." [Id. at 36 (citing id. at 276, 983, 1150).] In addition to not logically following from the ALJ's previous statement, nothing in this finding is supported by the record. Dr. Heskiaoff did state that in requesting his "final ratable report," the parties noted his "previous opinions with regard to [plaintiff's] need for additional treatment, [but] requested [him] to simply place these opinions as part of her future medical needs and issue a final report." [Id. at 275.] He stated, therefore, that "from a practical standpoint, [plaintiff's] condition be declared permanent and stationary." [Id.] He noted her diagnoses of myofascial sprain of the cervical spine; cervical radiculopathy; left carpal tunnel syndrome; myofascial sprain of the lumbar spine; spondylolisthesis, lumbar spine; lumbar radiculopathy; torn medial meniscus, left knee; impingement syndrome, right shoulder; arthrofibrosis, left shoulder; and status post-operative arthroscopy decompression, Mumford procedure, left shoulder. [Id. at 275-76.] He discussed plaintiff's "Impairment[s] Per AMA Guidelines" in even more detail later in his report [see id. at 279-80] and stated his opinion that plaintiff had reached maximum medical improvement. [Id. at 276.] He then noted her work-related restrictions as discussed above. [Id.] Dr. Heskiaoff also offered his opinion as to plaintiff's future medical care: she should have access to a trial of epidural blocks for her cervical and lumbar spine; she should have access to medication, physical therapy treatment, acupuncture, and bracing for her cervical and lumbar

14

spine; he specifically did not recommend surgery for her cervical spine; she should receive surgical intervention as necessary for the lumbar spine if there is deterioration in her lumbar spine symptoms; she is a candidate for operative arthroscopy with partial medial meniscectomy for her left knee, along with post-operative physical therapy, medication, and bracing; she is a candidate for carpal tunnel release to her left hand, with post-operative physical therapy, bracing, and medication; and, with respect to her left shoulder, she is a candidate for manipulation under anesthesia, with post-operative physical therapy treatment and medication. [Id. at 276-77.] Contrary to the ALJ's suggestion, Dr. Heskiaoff did not specifically state (or even imply) that any "anticipated improvement in [plaintiff's] functioning with additional treatment," made him "reluctant" to issue his report. Indeed, any purported "reluctance" to write this report is certainly not evident from the very thorough and professional report provided by Dr. Heskiaoff and did not in any way detract from his findings, work-related limitations, and suggested future treatment options, which were based on his review of plaintiff's medical records, diagnostic testing, and his own physical examinations.

Accordingly, the Court finds that the ALJ failed to provide specific and legitimate reasons for discounting and/or rejecting the opinions of Dr. Heskiaoff and the error was not harmless.

## VI.
## **REMAND FOR PAYMENT OF BENEFITS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 681 (9th Cir. 2017) (citation omitted). Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits. Garrison, 759 F.3d at 1020 (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th

Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met and recognizing that "the credit-as-true doctrine envisions 'some flexibility'"). In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of that flexibility is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 759 F.3d at 1020-21.

In this case, there is no need to develop the record or convene further administrative proceedings. First, although defendant generally argues that "Plaintiff's symptom and limitation allegations were indisputedly inconsistent with the record evidence," her symptom and limitation allegations with respect to her neck/cervical and shoulder limitations were consistent with the opinions of Dr. Heskiaoff, Dr. Godes, and Dr. Mays. Additionally, as explained above, the ALJ failed to provide a legally sufficient reason to reject the medical opinions of Dr. Heskiaoff related to plaintiff's neck/cervical movement and reaching limitations, which were generally consistent with the opinions of Dr. Godes and Dr. Mays who also found plaintiff limited to lifting no more than ten pounds occasionally, precluded from overhead lifting or from repetitive use of her upper extremeities, and limited to only occasional reaching. Finally, if Dr. Heskiaoff's improperly discredited opinion evidence were credited as true, it is clear that the ALJ would be required to find plaintiff disabled on remand. This follows from the strength of the improperly discredited evidence, which reflected a wide array of physical impairments as well as limitations relating to neck movement and only occasional reaching in any direction with the upper extremities, and the fact that the VE explicitly testified that there would be no work available for an individual such as plaintiff, who was limited to sedentary work and who also was limited to *occasional* reaching in all directions as described by Dr. Heskiaoff (and as generally supported by the opinions of Dr. Godes

and Dr. Mays).

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the payment of benefits, consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 16, 2019

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE